[No. 115-3.   Division Three.   July 14, 1970.]

FORREST H. BISHOP, *Respondent,* v. PROSSER-GRANDVIEW BROADCASTERS, INC., *Appellant.*

*Dwight A. Halstead,* for appellant.

*Edward B. Critchlow* (of *Critchlow, Williams, Ryals & Schuster*), for respondent.

EVANS, C. J.—Defendant corporation is the owner and operator of Radio Station KARY. Plaintiff Bishop was one of the initial organizers of KARY and owned 67 shares of stock in defendant corporation. He was station manager until 1957, when he severed relations with the station and commenced negotiations with defendant for the sale of his

stock. These negotiations were consummated more than 3 years later with the execution of a contract, by the terms of which defendant corporation agreed to purchase all of plaintiff's stock and one share each from three other stockholders for a total of $8,500, payable at $100 per month, including interest at 3 per cent per annum on the unpaid balance. The first payment was to be made within 15 days after defendant received approval of the Federal Communications Commission. This approval was received and the first payment was made March 8, 1962. The total amount paid between that date and July 11, 1967 was $5,700. When defendant corporation refused to make further payments on the contract plaintiff brought this action for the balance due in the sum of $4,577.

Defendant counterclaimed, contending that use of its funds for the purchase of its own shares of capital stock impaired and would continue to impair the capital stock of defendant corporation, contrary to the provisions of Laws of 1947, ch. 195, § 1 (RCW 23.01.120), the statute in existence at the time the purchase contract was executed. Defendant sought dismissal of plaintiff's complaint without prejudice to plaintiff's right to bring a new action when payment could be made without impairing capital, and for recovery of the $5,700 paid on the contract.

The court dismissed defendant's counterclaim, found for the plaintiff on the contract, and entered judgment for the balance due thereon in the sum of $4,577. Defendant appeals, and assigns error to the following finding of fact made by the trial court:

### III.

The purchase by the defendant corporation of plaintiff's shares of stock in said corporation did not, at the time of the purchase, or any reasonably foreseeable future, cause any impairment of the capital stock of the corporation.

In support of its counterclaim defendant produced its income tax returns for the years 1962 through 1967. The statements of financial condition attached thereto for this

period indicated the corporation's liabilities and capital stock outstanding for the entire period were in excess of the corporation's total assets. However, the evidence also established that in August of 1964 the present principal stockholder of the corporation, one Sidney Roach, bought substantially all of the stock of the corporation from the two radio station operators who had succeeded respondent Bishop. The purchase was made after an examination of the books and records of the corporation, which included the debt of the respondent. Roach paid the sum of $62,500 for the stock by assuming the liabilities of the radio station and some minor personal liabilities of the sellers. The station liabilities and capital stock at that time were approximately $40,500. Thus, based upon this sale, the value of assets over liabilities, including capital stock outstanding, was $22,000. For this equity Roach received 125 shares of a total of 136 shares of the capital stock of the corporation. At the trial in June of 1969 the court had before it the financial statements for 1966 and 1967. A comparison of these statements with the 1962 and 1963 financial statements showed an increase of assets and a lesser increase in liabilities. The balance of respondent's debt was still being carried as a long-term liability but, even at book value, the financial condition of the company was sounder at the time of trial than when the stock purchase contract was executed in 1962.

The trial court's finding No. 3, *supra,* is essentially a conclusion of law. There are no findings reciting the facts forming the basis for its conclusion that the stock purchased by defendant corporation did not cause an impairment of capital stock. Therefore, we must read this finding in context with the court's oral opinion. *Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 441 P.2d 128 (1968), *Northern Pac. Ry. v. State Util. & Transp. Comm'n,* 68 Wn.2d 915, 416 P.2d 337 (1966). The trial court, in its oral opinion, stated:

Now, under the facts of this case we are dealing with a typical approach to presentation of value of a corporation

from a tax standpoint. We have before us Exhibits 3 through 10 which are illustrative of the way that people treat tax returns embodying profit and loss statements which are of primary benefit to them or their corporation. In the State of Washington, under its tax structure, I think we are quite unrealistic if we say that financial statements attached to and made a part of a Federal tax return represents the true value of a company. For instance, in this and every like case we have a situation where very usable, very salable properties and equipment are depreciated as rapidly as possible for tax purposes, and absolutely no "going business" or "license" value is taken into account in the profit and loss statement. *That this does not present the true picture is axiomatic and well illustrated by the multiple sales of the corporate stock in this case.*

I believe that the Court must take into consideration that, besides the organizational expenses which the accountant feels are valuable from a tax standpoint, there is a very real value that has been bought and sold three times in this corporation. This is the FCC license which is transferrable, subject only to limited restrictions (in the case of the FCC) as to the background of unauthorized stock purchases and/or past disciplinary problems.

In addition, this was a going corporation and a local market was established. That the corporation has not made a profit is not determinative of the value of such a corporation and such a licensed operation.

*In addition to the fact that the entire corporate stock has sold once and part of it has sold twice, the corporation has had (whether it counts 221 shares or 136 shares) the benefit of having this stock written off as no longer being a liability.* There is also the matter of laches. This corporation has taken all of the advantages of a 3% long-term contract that was determined by three sets of Boards of Directors at one time or another as being beneficial to the corporation and not unduly impairing its capital structure, and they may be considered under the law to have waived the right to claim any benefit that the statute might have otherwise given them.

The Court, therefore, finds that the defense of violation of the '47 Amendment (or law as amended) prohibiting the re-purchase of stock is not applicable to this case, and

'that Mr. Bishop is entitled to judgment on his claim in the amount of $4577.00.

(Italics ours.)

Counsel for both parties agree that the controlling statute is the former RCW 23.01.120, since repealed by the Washington business corporations act, Laws of 1965, ch. 53. RCW 23.01.120 provided as follows:

(2) Every corporation organized hereunder shall have the power to purchase, hold, sell and transfer shares of its own capital stock: *Provided,* That no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital stock of the corporation.

As will be noted, in determining whether an impairment of capital stock occurred, the trial court applied the test of actual value rather than book value. In determining actual value it noted that the financial statements attached to the income tax returns failed to include as assets the value of a going business and the value of an FCC license. The court had before it, also, the undisputed fact that Sidney Roach, the present principal stockholder and owner of the appellant corporation, purchased 125 shares of the 136 shares of outstanding stock for approximately $22,000 more than liabilities and capital stock, thus indicating an actual value far in excess of book value.

Neither counsel for appellant nor respondent has cited any authority from this jurisdiction on the precise question of whether actual value of assets is the true test to apply when determining whether there has been an impairment of capital stock. There is some authority for the proposition that appreciation of corporate assets over original costs is insufficient to increase the capital stock or surplus of the corporation. See 43 Wash. L. Rev. 337 (1967). However, we believe the better reasoned rule is found in *Mountain State Steel Foundries v. Commissioner,* 284 F.2d 737 (4th Cir. 1960), interpreting a West Virginia impairment of capital statute regulating share repurchases to permit conservative use of unrealized appreciation.

In reversing a ruling of the Commissioner of Internal Revenue, who failed to allow a deduction of interest paid on a note given on a repurchase contract for corporate stock, based on the contention that the contract was unenforceable, the court stated:

> He [the commissioner] does not question the disparity between real and book values; to him, it is the failure to have recorded the real value on the books which occasioned the asserted impairment of the capital.

We think a determination of the substantive rights of creditors, stockholders and the corporation, in the application of this statute, should not be so circumscribed by managerial decision to make or withhold particular entries on the books or by the accounting procedures followed by management, procedures which may, or may not, have been realistic or enlightened. Write ups by appraisal are frequently suspect. As a practice they are now usually frowned upon. The suggestion is startling that such a ministerial act, which alters the real situation not in the least, could enlarge corporate power to purchase its stock.

When the legislature spoke of impairment of capital, we think it had a more objective standard than a computation which is the product of years of financial history of an enterprise. If write ups by appraisal be subject to criticism in the world of corporate finance, a blind acceptance of book values as real is much more vulnerable. An overstatement of assets because of a failure to charge off obsolescent equipment should not enlarge the power of the corporation to buy its stock, nor should an understatement because of appreciation in values and the decline in the worth of money restrict it.

Corporate power to purchase its own stock has been frequently abused. Done by corporations conducting faltering businesses, it has been employed to create preferences to the detriment of creditors and of the other stockholders. It was to protect and preserve the margin of safety supplied by the real value of contributed capital that such statutes were enacted. That purpose is not served if the statute is applied in terms of unrealistic values, whether higher or lower than real values. At least until the highest court of West Virginia should otherwise decide, we think for our collateral purpose the

statute should be construed as prohibiting the purchase of its own stock if the use of its funds for the purpose would deplete the realizable value of its assets to a point below the total of its liabilities and capital.

What little can be found in decided cases applying similar statutes suggests that actual values, rather than book figures, are critical to the inquiry.

(Footnotes omitted.)

While in *Mountain State Steel Foundries* the court found an overstatement of assets, and in the present case we are considering an understatement of assets, it is our view that the same reasoning applies. Actual values, rather than book figures, are critical to the inquiry.

There is substantial evidence to support the trial court's conclusion that there was an understatement of values in the financial statements of defendant corporation, and that no impairment of capital stock resulted from the repurchase contract in question.

Judgment affirmed.

GREEN and MUNSON, JJ., concur.