[No. 826-1.    Division One—Panel 1.    May 30, 1972.]

*In the Matter of the Estate of* TILLIE BECKLUND, *Deceased.*

*Ralph M. Rogers,* for appellants.

*Davies, Pearson, Anderson & Gadbow* and *Claude M. Pearson,* for respondents.

CALLOW, J.—Tillie Becklund, a childless widow, died in April 1970. She was survived by one brother, Gustaf Karlsson; several nieces and nephews, the children of her three deceased sisters; a brother-in-law and sisters-in-law. Her will, executed in 1958, is outlined as follows:

Page 1

FIRST: Revocation of prior wills.

SECOND: Direction to pay costs and expenses of administration.

THIRD: Designation of brother, Gustaf Karlsson, if living upon her death as recipient of one-half of estate. (He was living, and therefore the remainder of the clause was inapplicable.)

Page 2

FOURTH: Other half of estate divided into ten equal parts as follows:
a. Part to niece, Elsie Swanson.
b. Part to two nephews, Rune and Tor Scheridin.
c. Part to five nieces and one nephew, children of Helga Sterner.
d. Part to four nephews and one niece, children of Warner Becklund.

Page 3 (torn from will)

FOURTH: (continued)
e. Part to nephew, Frank Becklund.
f. Part to brother-in-law, Walfred Becklund.
g. Part to sister-in-law, Vera Lee.
h. Part to sister-in-law, Viola Stalt.
i. Part to sister-in-law, Wanda Baklin.
j. Part to nieces, Barbara Windh and Thelma Simpson.

FIFTH: If brother, Gustaf Karlsson, is deceased at the time of her death, then total estate is divided into eleven equal parts and the children of Gustaf Karlsson receive the eleventh part. If a brother-in-law or a sister-in-law

12

Page 4

FIFTH: predeceases, then their share goes to their children, if living, if no children living then to residue. Then the clause continues to the end of the page: "In any event my . . .

FIFTH: (continued) (This page starts with the continuation of the sentence from page 3.) "brother-in-law, or any of my sisters-in-law should die . . ." then these bequests lapse into residue.

If a niece or nephew named in a part dies, then there is a lapse to the other nieces and nephews included in that part. If all within a part die, then there is a lapse to the remaining parts.

SIXTH: Appoints Elsie Swanson, executrix, without bond and includes non-intervention provisions.

Page 5

SIXTH: (continued) Provides that in the event Elsie Swanson predeceases the testatrix, then Barbara Windh is the alternate executrix.

Space for signature. Attestation clause.

Elsie Swanson, named as executrix, petitioned for probate of the will and for her appointment. The petition noted that page 3 had been torn from the original and requested a hearing to determine whether the will should be admitted with page 3 removed or restored. At the original hearing, it was stipulated that the will should be admitted with page 3 restored, and the court orally ruled in accordance with this stipulation. Before the entry of a written order, the named executrix expressed a desire to withdraw from the stipulation; and the matter was resubmitted at a second hearing. Following that hearing, at which all concerned were present or represented, findings, conclusions and a "Decree Restoring Page Three to Will and Order Admitting Will to Probate" were entered.

The findings recite that during the life of Tillie Becklund, the named executrix never entered the safe deposit box of

Tillie Becklund; but when Tillie Becklund died, the executrix went to the box by herself, removed the will and took it to the office of the lawyer who drew it. When it was compared with the lawyer's office copy, the absence of page 3 was discovered. The findings further state that if there was an attempted revocation it was invalid; but even if effective, it was merely a step in an alteration which cannot be allowed because it violated the statute of wills. In addition, the court found that Tillie Becklund intended to revoke page 3 only if her attempt was successful; and since it was unsuccessful, her intention was that the entire will be probated. The evidence was as consistent with accident as with intent to revoke, and no evidence was found of any intent to destroy the will entirely. The court concluded (in the form of a finding) that the decedent had preserved the instrument as her will and found that either page 3 became separated by mistake or inadvertence or was separated intentionally with the purpose of revoking its provisions. The court found that if the page was separated to revoke its provisions intentionally, the dispositive pattern was altered in an impermissible way under the statute of wills and dependent relative revocation was applicable.

The findings are cast in terms appropriately used to frame conclusions. This is not fatal to consideration of their purport in the appropriate context. The interpretation or construction of findings and conclusions presents a question of law for the court. *Callan v. Callan,* 2 Wn. App. 446, 468 P.2d 456 (1970). *See also Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *Kane v. Klos,* 50 Wn.2d 778, 314 P.2d 672 (1957); *In re Estate of Bacon,* 91 Wash. 1, 156 P. 845 (1916); *Bishop v. Prosser-Grandview Broadcasters, Inc.,* 3 Wn. App. 43, 472 P.2d 560 (1970).

The executrix claims that it was error to restore page 3. She insists the supposedly revoked bequest should pass by the laws of descent, that increases in the residue by revocation of parts of a will complies with the statute, that meaningless words left as a result of a revocation have no effect

14

and that the doctrine of dependent relative revocation applies only to an altered will.

█ The named executrix does not contend that page 3 was lost but that it was torn from the will by Tillie Becklund with intent to revoke the bequests on page 3 so the parts set forth on that page would descend by law to her statutorily designated heirs. We cannot agree with this contention in the face of the presumption against intestacy, *Erickson v. Reinbold*, 6 Wn. App. 407, 493 P.2d 794 (1972), and the presumption that a testator intends to dispose of his entire estate rather than die intestate as to any portion. *In re Estate of Lidston*, 32 Wn.2d 408, 202 P.2d 259 (1949).

Clause FIFTH of the will contains a dispositive scheme which includes the entire estate in nearly every contingency until the probabilities of intestacy are remote. The encompassing scheme that it sets forth should be carried out as the intent of the testatrix rather than to suppose she eliminated page 3 with the intent that the parts that were to pass to the beneficiaries set forth thereon should pass instead by intestacy.

We have examined the provisions of the will as a complete instrument and considered the result when page 3 is removed. Remove page 3 and inconsistencies appear that make it unlikely the testatrix would have intended to revoke the will in such a manner. If indeed she did, reason indicates such actions were taken only with the intent that they be effective upon the making of a new will. Inconsistencies noted are:

1. The scheme of the will is thwarted. The remaining provisions do not comprise an integral whole which would dispose of the entire estate under each circumstance that time may bring. The plan for disposition of the residue is clouded, it being set forth in clause FIFTH, which is partially on page 3 and partially on page 4. When page 3 is removed, the plan is incomplete.

2. The last sentence on page 3 is incomplete, part appearing on page 3 and part appearing on page 4. This indicates

that the testatrix intended (if indeed page 3 was removed with intent) to make a later dispositive document.

3. Page 3 is necessary if the scheme begun on page 1 and 2 is to be complete.

4. Page 2 calls for the division of half of the estate into ten equal parts; and if page 3 is removed, six of the parts are gone, the portions are changed and the division contemplated on page 2 cannot be put into effect and is no longer sound and sensible.

5. A niece removed as a beneficiary by the removal of page 3, clause FOURTH (j) remains as the alternate executrix on page 5, clause SIXTH. It is improbable that the testatrix would remove a beneficiary and wish her to remain as an alternate executrix.

6. The removal of page 3 removes beneficiaries arbitrarily. If there was an intent to remove one or more beneficiaries, the probabilities that all of those set forth as beneficiaries on page 3, clause FOURTH (e)-(g) would have become anathema to the testatrix, while those on page 2, clause FOURTH·(a)-(d) would have retained her favor is unlikely.

■ The Washington statute[1] permits partial revocation of a will, and therefore we must consider the standards that must be met in order for a partial revocation to be allowable and effective. It has been held that a partial revocation cannot result in a change in the scheme of a will, an impartation of a new meaning or a transmutation of the overall plan. *In re Estate of Appleton,* 163 Wash. 632, 2 P.2d 71 (1931), was a will contest wherein the trial court admitted certain portions of a document as the last will and rejected others as having been revoked by cancellation. The whole of a paragraph as originally written, including an attempted cancelled portion, was reestablished. It was held

---

[1] "[RCW] 11.12.040 *Revocation of will, how effected.* A will, *or any part thereof,* can be revoked

"(1) By a written will; or

"(2) By being burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself . . ." (Italics ours.)

that statutes similar to RCW 11.20.040 which authorize partial revocation by cancellation with intent to revoke leave the remainder unaffected if the remainder, standing alone, is an understandable testamentary expression. The court rejected the attempted partial revocation because the effect of it would have been to make a new and enlarged bequest without executing a new will in writing. The attempted partial revocation was held ineffective because the change resulted in a new dispositive scheme. A partial revocation of a testamentary disposition requires annulment of the part to be revoked so it ceases to exist and is inoperative. When the substitution of certain words for others results instead in a different meaning, there is not a mere revocation but rather a transmutation so that a new clause is created. The formalities of the statute of wills must be followed when this is the intended result. *See also Fletcher Trust Co. v. Morse,* 230 Ind. 44, 97 N.E.2d 154 (1951). As was said in 2 W. Page, Wills § 21.19 (3d ed. W. Bowe & D. Parker 1960) at 374:

> The Statute of Frauds provided, in negative terms, that "no devise . . . nor any clause thereof" should be revoked except by a subsequent will or by one of the specified acts, manifest upon the face of the will. The Wills Act of Victoria used the words "no will or codicil or any part thereof." Similar provisions are found in many American statutes. Where such provisions are in force, a will may be revoked partially by canceling one or more clauses or by burning with intention to revoke such clause or clauses but not to revoke the whole will; provided that, if the will is one which must be attested and subscribed by witnesses, such cancellation, burning, or other physical acts, if given full effect, will operate only as a revocation of such clauses and not as a new devise.
>
> The physical act, must for this purpose, conform to the usual requirements of such type of revocation. In such jurisdictions, the testator may cut down a gift by partial revocation if it does not operate as a new devise to some other beneficiary. A devise of a fee could be cut down to a life estate by striking out the words "her heirs and assigns forever" after execution.

Where the words which have been canceled or destroyed are so connected with the rest of the will that, if effect were given to such partial revocation, it would operate as a new devise without republication or re-execution, no effect will be given to such attempted partial revocation of a will which must be attested and subscribed by witnesses. . . .

No effect will be given to the testator's act in cutting out a part of the will so as to substitute one beneficiary for another nor to his act in canceling words so as to increase a life estate to a fee.

(Footnotes omitted.) *See also* Annot., 24 A.L.R.2d 514, 551 (1952).

If the result of the partial revocation only causes an increase in the residuary estate rather than such a vital enhancement thereof as to constitute a new scheme, this is not a disparate testamentary disposition but only a consequence resulting from the exercise of the power given the testator by the statute. *Meredith v. Meredith,* 35 Del. 35, 157 A. 202 (1931); *Brown v. Brown,* 91 S.C. 101, 74 S.E. 135 (1912); *In re Estate of Appleton, supra.* However, the remaining portion of the will must be an understandable testamentary disposition. *In re Estate of Appleton, supra.* In 2 W. Page, Wills § 21.25 (3d ed. W. Bowe & D. Parker 1960) at 385 states:

A cancellation of a part of a will which leaves the remainder of the will unintelligible or inoperative, is a revocation of the entire will. An alteration which consists in destroying the first two sheets of paper upon which the will is written and substituting others, revokes the whole will if the remaining sheets contain provisions which cannot be carried into effect if the first two sheets are destroyed. This exception to the general rule rests on the theory that the testator intended a revocation of the clauses canceled and that he could not have intended the remainder of his will to be enforced in the condition assumed; and also it is based on the principle that the courts will not enforce a vague and uncertain will, whether it is vague or uncertain because of cancellations

or because of defects in the original scheme of disposition.

(Footnotes omitted.)

A partial revocation cannot result in an unnatural dispository scheme. *In re Estate of Lindeman,* 141 Pa. Super. 225, 14 A.2d 837 (1940).

We have previously noted the inconsistencies which result when page 3 is removed. When we analyze that which would then remain of the will, it becomes apparent that the basic scheme of the will is that if the testatrix's brother is living he receives a half and the remaining half is divided into ten equal parts to be distributed to those thereinafter designated and then, illogically, only four parts are designated. In the event the testatrix's brother is deceased, the estate is divided into eleven equal parts but that which remains disposes of only five. The result is that ten or eleven parts are contemplated by pages 1, 2, 4 and 5, but they dispose of only four or five parts. When we remove the six parts that are disposed of by page 3, the equation initially considered by the testatrix is obliterated and there is no longer an encompassing estate plan that is comprehensible. The portion of the estate designated to objects of the bounty of the testatrix now would be forced unnaturally into the provisions that remain on page 4. This would create a new dispositive scheme.

We also note that the remaining partial paragraph at the top of page 4 which remains unaffected speaks of certain in-laws as receiving gifts but nowhere in that which remains is there any indication of who they might be or what proportion they are to receive. This situation is entitled to be weighed as evidence.

There is no evidence outside of the documents themselves from which we can ascertain the intent or lack of intent of the testatrix. A valid partial revocation under the statute requires an act performed by the testatrix with intention to revoke which leaves remaining an understandable testamentary disposition which is a natural dispository

scheme. The partial revocation may not result in a change, alteration or modification of the original will; but the act is restricted to the abolishment, abrogation, annulment, recall, repudiation or retraction of a part of the original will. The removal of page 3 of the will, if an act performed by the testatrix with an intent to revoke, is not an act that is permissible within those restrictions. Therefore, the partial revocation fails in the attempt.

■ The attempted partial revocation falls for failure to meet the standards required. When an attempted partial revocation fails and the unrevoked sentence, paragraph or page remains available for consideration, then the doctrine of dependent relative revocation is applicable.

When a partial revocation fails, the law considers that the testator intended that if his efforts were unsuccessful the originally expressed intent would remain in force. The presumption then exists that the attemped revocation was performed by the testator while he relied on the safeguard that if unsuccessful, the original would stand. As stated in *In re Estate of Kerckhof*, 13 Wn.2d 469, 125 P.2d 284 (1942) at 473:

> The rule, it will be noted, is essentially one of presumed intention. The courts, apparently out of a desire to give effect to the intention of the testator, have presumed that he would have preferred the will which he had canceled or mutilated to the intestacy brought about by the unforeseen thwarting of the attempted later alternative disposition.

> Very briefly, the rationale of the doctrine is this: To effect the revocation of a will, two elements are essential, an overt act and *animus revocandi;* and there can be no real intention to revoke when the act of destruction or cancellation is induced and motivated by a mental misconception of the effect of the act on account of ignorance, or mistake, or some other error.

The doctrine applies when an attempt to change or revoke a will in whole or in part fails. When the attempted new disposition is inoperative, the revocation fails also, and the original remains in force. *In re Estate of Banks,* 56

Wn.2d 139, 351 P.2d 531 (1960); *In re Estate of DeLion,* 28 Wn.2d 649, 183 P.2d 995 (1947); *In re Estate of Appleton, supra. See also* Note, 18 Wash. L. Rev. 45 (1943); Comment, *Partial Revocation of a Will by Excision, Obliteration, Cancellation, or Insertion,* 12 Baylor L. Rev. 194 (1960); T. Atkinson, Wills § 88 (2d ed. 1953); 2 W. Page, Wills §§ 21.57, 21.58 (3d ed. W. Bowe & D. Parker 1960).

If there was an attempt to revoke page 3 (there is no evidence of such an intent) it was dependent upon the success of the attempt. It was unsuccessful and the doctrine restores that not successfully nullified.

We uphold the decision of the trial court.

HOROWITZ, C.J., and WILLIAMS, J., concur.