17 P.3d 1251 (2001)
NORTHWEST LINE CONSTRUCTORS CHAPTER OF THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, a foreign corporation; Cascade Chapter of the National Electrical Contractors Association, a Washington corporation; Puget Sound Chapter of the National Electrical Contractors Association, a Washington corporation, Southwest Washington Chapter of the National Electrical Contractors Association, a Washington corporation; Inland Empire Chapter of the National Electrical Contractors Association, a Washington corporation, Appellants,
v.
SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT NO. 1, Respondent.
No. 45961-9-I.
Court of Appeals of Washington, Division 1.
February 12, 2001.
*1253 H. Lee Cook, Stewart, Sokol & Gray, Llc, Portland, Or., for Appellants.
Henry Scott Holte, Anderson, Hunter, Dewell, Baker & Collins, Ps, Mukilteo; Bardell D. Miller, Public Utility Dist. # 1 of Snohomish County, Everett; J. Robert Leach, Anderson Hunter Law Firm, Everett, for Respondent.
*1252 KENNEDY, J.
The National Electrical Contractors Association, Northwest Line Constructors Chapter (NECA) brought this action for declaratory judgment and injunctive relief, alleging in its complaint that Snohomish County Public Utility District No. 1 (the PUD) had in the past and still was "purchasing more than $50,000 worth of individual items of equipment and installing these items using its own forces without public competitive bidding required by RCW 54.04.070[,]"[1] a public utility competitive bidding statute. The complaint also alleged that PUD was "splitting" its contracts in violation of RCW 54.04.070 and other bidding statutes.[2] The trial court granted the PUD's motion for summary judgment dismissing NECA's complaint, and we affirm.
RCW 54.04.070 allows a public utility district to split electrical substation projects into site preparation work and electrical installation work, and to have its own regularly employed personnel perform the electrical installation work, rather than calling for bids, where such is an accepted industry practice under prudent utility management. That same statute defines "prudent utility management" to mean "performing work with regularly employed personnel utilizing material of a worth not exceeding fifty thousand dollars in value" with the further proviso that "such limit on the value of material being utilized in work being performed by regularly employed personnel shall not include the value of individual items of equipment purchased or acquired and used as one unit of a project."[3]
NECA failed to allege in its complaint that PUD's conduct fell outside accepted industry practice under prudent utility management, but nevertheless argued at summary judgment that (1) splitting a substation project between site work and electrical work is not an accepted industry practice and that (2) the PUD failed to contract out electrical work in which the value of the material used, exclusive of equipment, exceeded $50,000. The trial court gave NECA leave to amend its complaint to allege that the PUD's practices fell outside accepted industry practice under prudent utility management but NECA failed to do so. The trial court then dismissed the complaint with prejudice because it failed to state a claim under the bidding statute. But the court also ruled that NECA could file a new action properly raising the claim if the facts warranted it, and the PUD agrees for purposes of this appeal that if NECA does so, it will not contend that the action is barred by preclusion doctrine.[4]

DISCUSSION
Summary judgment is available only if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment order, this court conducts the same inquiry as the trial court. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). We review questions of law de novo. Id.
NECA argues that the PUD's practice of splitting projects between site preparation work and electrical installation work violates RCW 54.04.070 because that statute does not permit contract splitting. This issue involves statutory construction, a question *1254 of law reviewed de novo. State v. Ammons, 136 Wash.2d 453, 456, 963 P.2d 812 (1998) (citations omitted). Where a statute is plain, unambiguous, and clear on its face, there is no room for construction. National Elec. Contractors Ass'n v. City of Bellevue, 1 Wash.App. 81, 83, 459 P.2d 420 (1969) (citing King County v. City of Seattle, 70 Wash.2d 988, 425 P.2d 887 (1967)).
The portion of RCW 54.04.070[5] relevant to this case states:
Any work ordered by a district commission, the estimated cost of which is in excess of ten thousand dollars exclusive of sales tax, shall be by contract, except that a district commission may have its own regularly employed personnel perform work which is an accepted industry practice under prudent utility management without a contract. Prudent utility management means performing work with regularly employed personnel utilizing material of a worth not exceeding fifty thousand dollars in value without a contract: PROVIDED, That such limit on the value of material being utilized in work being performed by regularly employed personnel shall not include the value of individual items of equipment purchased or acquired and used as one unit of a project.
(Emphasis in original). Under the plain terms of this statute, unless an exception applies, work ordered by a public utility district must be by contract if the estimated cost of the work is in excess of $10,000. Under the only relevant exception here, a district may have its own regularly employed personnel perform work without calling for competitive bids where such is an accepted industry practice under prudent utility management. "Prudent utility management means performing work with regularly employed personnel utilizing material of a worth not exceeding fifty thousand dollars in value" but "such limit on the value of material being utilized in work being performed by regularly employed personnel shall not include the value of individual items of equipment purchased or acquired and used as one unit of a project." RCW 54.04.070.
To the extent that NECA argues that RCW 54.04.070 prohibits project splitting of the sort that the PUD practices, it is wrong. Nothing in the plain language of this statute prohibits the PUD from performing the electrical installation portion of a substation project using its own employees, so long as performing the work in this manner is an accepted industry practice and so long as no more than $50,000 of materials, exclusive of equipment used as one unit of the project, is utilized. The fact that the statute uses the word "work" rather than "project" bolsters this conclusion. "Work" is defined as "a specific task, duty, function, or assignment often being a part or phase of some larger activity[.]" Webster's Third New International Dictionary 2634 (1969). By contrast, "project" is defined as "a vast enterprise usually sponsored and financed by a government." Id. at 1813. "Work" is not synonymous with "project." Just as several items of work can comprise one vast project, electrical installation work and site preparation work can make up an electrical substation project.
Specifically relevant to the facts of this case is the definition of "construction or improvement of any electrical facility" found under RCW 54.04.080:
The term "construction or improvement of any electrical facility" as used in this section and in RCW 54.04.085, shall mean the construction, the moving, maintenance, modification, or enlargement of facilities primarily used or to be used for the transmission or distribution of electricity at voltages above seven hundred fifty volts, including structures directly supporting transmission or distribution conductors but not including site preparation, housing, or protective fencing associated with but not included in a contract for such construction[.]
(Emphasis added). This language clearly indicates that the Legislature contemplated the division of an electrical substation project into electrical installation work and site preparation work.
Despite the clear and unambiguous language of the statute, NECA cites National *1255 Elec. Contractors Ass'n v. City of Bellevue for the proposition that contract splitting is prohibited in this case. In that case, the issue was whether a third class city could separate work and material in determining whether an improvement exceeds $5,000 in value under the competitive bidding statute there at issue, RCW 35.23.352. While the court held that the statute prohibited contract splitting, this was because the plain meaning of the phrase "improvement, including cost of materials, supplies and equipment" found in the relevant statute "leaves no room for construction." National Elec. Contractors Ass'n, 1 Wash.App. at 84, 459 P.2d 420. In this case, the language of the relevant statute does not limit the PUD's ability to split a project; instead, the statutory scheme, read as a whole, indicates that such practices are permitted.
NECA next argues that the trial court erred when it found that NECA's complaint failed to state claims later raised at summary judgment that (1) splitting a substation project between site work and electrical work is not an accepted industry practice and that (2) the PUD failed to contract out electrical work in which the value of the material used, exclusive of equipment, exceeds $50,000. NECA claims that these allegations survive because its complaint alleged that the PUD violated and will continue to violate RCW 54.04.070.
CR 8(a) requires that a pleading contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled." CR 8(f), reflecting modern liberal pleading, states that "[a]ll pleadings shall be so construed as to do substantial justice."
"[P]leadings are primarily intended to give notice to the court and the opponent of the general nature of the claim asserted." Lewis v. Bell, 45 Wash.App. 192, 197, 724 P.2d 425 (1986) (citing Lightner v. Balow, 59 Wash.2d 856, 370 P.2d 982 (1962)). Although inexpert pleading is permitted, insufficient pleading is not. Id. "A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests." Id. (citing Williams v. Western Sur. Co., 6 Wash.App. 300, 492 P.2d 596 (1972)).
Even a liberal examination of NECA's complaint cannot support NECA's contention that it sufficiently pleaded the specific allegations raised at summary judgment. In Dewey v. Tacoma Sch. Dist. No. 10, 95 Wash. App. 18, 974 P.2d 847 (1999), the court found the plaintiff's complaint failed to plead a First Amendment violation because it did not allege all elements necessary to establish a prima facie free speech claim. Id. at 24-25, 974 P.2d 847. The court noted that "[a] complaint must at least identify the legal theories upon which the plaintiff is seeking recovery." Id. at 25, 974 P.2d 847 (citing Molloy v. City of Bellevue, 71 Wash.App. 382, 389, 859 P.2d 613 (1993)). Similarly, while NECA's complaint implies that the PUD is generally in violation of RCW 54.04.070, nowhere does it identify or even fairly imply the specific legal theories NECA raised at summary judgment. The closest NECA came to alleging facts to support its legal theories was in paragraph 3.4 of its complaint. That paragraph stated:
PUD has in the past and is currently entering into contracts in which it is purchasing more than $50,000 worth of individual items of equipment and installing these items using its own forces without public competitive bidding required by RCW 54.04.070.
Clerk's Papers at 175. However, that paragraph, whether by error or by a misreading of the statute, fails to allege a violation under the statute at all, as the $50,000 limit under the statute's exception to competitive bidding does not include the value of individual items of equipment purchased and used as one unit in a project. Because NECA's complaint did not give notice of the factual allegations made at summary judgment, the trial court correctly concluded that NECA failed to plead these allegations.
NECA's final contention is that the trial court erred by granting it leave to amend its complaint and then dismissing the complaint with prejudice. While it is true that the court's order on summary judgment dismissed NECA's complaint with prejudice, *1256 that same order states that the court's "memorandum decision on November 19,1999... [is] fully incorporated by reference[.]" Clerk's Papers at 28. This being the case, the court's clear intent was to preserve the specific allegations that it concluded were not pleaded in the complaint:
[T]his Court's conclusion that plaintiff has not plead[ed] this claim is made without prejudice to plaintiff to amend its complaint or file a suit properly pleading such a claim in the future if the facts warrant it. Further it is without prejudice to the defendant to re-note a motion for Summary Judgment on the issue once plead[ed].
Id. at 23, 974 P.2d 847.
NECA fails to explain why it did not exercise its right to amend prior to the court's dismissal of the complaint; still, nothing in the trial court's ruling prevents NECA from raising these unpleaded issues in the future, if the facts warrant a new action. Moreover, the PUD agreed, during oral argument for this appeal, that it would not contend that a new action raising the unpleaded claims is barred by preclusion doctrine, given the nature of the trial court's ruling.
We affirm the trial court's dismissal of NECA's complaint by way of summary judgment.
AGID, J., and COX, J., concur.
NOTES
[1] Clerk's Papers at 175.
[2] Clerk's Papers at 176.
[3] RCW 54.04.070.
[4] In the proceedings below, the PUD challenged NECA's standing to bring the action. The trial court ruled that NECA had associational and public interest standing. The PUD does not challenge this ruling on appeal; accordingly, we will treat it as the law of the case for purposes of this appeal.
[5] RCW 54.04.070 was amended in 2000 for reasons not relevant to this appeal.