131 P.3d 916 (2006)
132 Wash.App. 334
In re the ESTATE OF Alice M. BOWERS, Deceased,
Alison Berghmans, Appellant,
v.
Museum of Flight, Respondent.
No. 56108-1-I.
Court of Appeals of Washington, Division 1.
April 3, 2006.
Reconsideration Denied May 1, 2006.
*917 D. Douglas Titus, Attorney at Law, Seattle, WA, for Appellant.
Robert Stanley Mucklestone, Perkins Coie LLP, Erin Childress Thakkar, Attorney at Law, Seattle, WA, for Respondent.
James Schermer, Attorney at Law, Seattle, WA, for Other Parties.
SCHINDLER, J.
¶ 1 Alice Bowers in her 1991 Will (1991 Will) left a valuable airplane and airplane memorabilia collection to the Museum of Flight and left the remainder of her estate in trust for her daughter, Alison Berghmans. In April 2004, Alice retained a lawyer to revoke the power of attorney she had given her daughter and recover the items her daughter had taken from her safety deposit box including the original 1991 Will. In August 2004, Alice asked her attorney to draft a new will (2004 Will). Alice reiterated her intent to leave the airplane collection to the Museum of Flight, but wanted to eliminate the trust to her daughter and instead leave the remainder of her estate to her cousins with a $500 gift to her daughter. At Alice's request, the lawyer mailed the 2004 Will to her in September 2004 so Alice could execute it at home. When Alice died three months later, the lawyer found the 2004 Will, but it was not executed. The lawyer could not locate the original 1991 Will.
¶ 2 Alison challenges the superior court decision to admit the 1991 Will to probate under RCW 11.20.070 and the sufficiency of the Museum of Flight's Petition to admit the 1991 Will. We conclude the Museum met its burden of proving that the 1991 Will was "lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will" under RCW 11.20.070(1). Because clear, cogent, and convincing evidence establishes Alice did not intend to die intestate and did not intend to leave the airplane collection to her daughter, the doctrine of dependant relative revocation rebuts the presumption that the lost or destroyed 1991 Will was revoked. In addition, the Petition provided adequate notice to the parties that the Museum of Flight was seeking to admit the 1991 Will to probate under the lost or destroyed will and probate statutes. We affirm.

FACTS
¶ 3 Alice Bowers was married to Peter Bowers. They each had one child from a previous marriage. Alice had a daughter, Alison Berghmans, and Peter had a son, David Bowers.
¶ 4 Peter had a lifetime commitment to aviation and was a longtime board member and trustee of the Museum of Flight. He owned an extensive and valuable airplane and airplane memorabilia collection. In 1991, Peter and Alice executed reciprocal wills leaving the airplane collection to the Museum of Flight.
¶ 5 Peter died before Alice. Alice's 1991 Will provides that if Peter died first, the airplane collection would be left to the Museum: "I give and bequeath all of my antique airplanes, airplane memorabilia, airplane photographs and negatives, and my airplane library unto the MUSEUM OF FLIGHT in King County, WA." Under Alice's 1991 Will, the remainder of her estate was left in trust for the benefit of her daughter Alison. Because of Alison's problems with alcohol, the Will provided explicit instructions for the trust. According to the 1991 Will, "ALISON BERGHMANS has struggled with alcohol problems for many years, and it is not my desire to have the Trust disbanded until she has demonstrated long-term sobriety; however, I entrust any ultimate decision to the Trustee appointed pursuant to the terms of this Will." The "express purpose" of the trust was to "provide funds which will make her life as comfortable, as enjoyable and as productive as possible" and allowed the trustee to make distributions to provide for Alison's "support, maintenance, social services, advocacy services, medical services, rehabilitation services, legal services, educational services, developmental services, and recreational services." The trust was to terminate at Alison's death unless the trustee determined Alison was "fully capable of managing her entire inheritance."
¶ 6 In April 2004, Alice retained an attorney, Beth McDaniel, to revoke the general *918 power of attorney she had given her daughter Alison. At Alice's direction, McDaniel also obtained an order on August 4, 2004, directing Alison to return various items she had taken from Alice's safety deposit box. In compliance with the order, Alison returned the items to McDaniel, including a cardboard file box containing Alice's original 1991 Will. McDaniel delivered the returned items to Alice in August.
¶ 7 In August, Alice also asked McDaniel to prepare a new will for her. Alice did not want to change the gift to the Museum but wanted to eliminate the trust for Alison and leave the remainder of her estate to her cousins with only a $500 gift to Alison. McDaniel testified that in at least two conversations with Alice regarding the 2004 Will, Alice "specifically stated whom she wanted as the beneficiaries of her estate" and "was adamant" that the Museum receive the airplane memorabilia and the airplane collection. In the 2004 Will, Alice left "[a]ll airplane memorabilia, airplane photographs, negatives, and airplane library compiled by my late husband, Peter M. Bowers, to the Museum of Flight," and left the remainder of her estate to her cousins. At Alice's request McDaniel mailed the 2004 Will to Alice to execute. According to McDaniel, Alice wanted to execute the 2004 Will at home in the presence of friends to avoid the burden of traveling to McDaniel's office and incurring additional attorney fees.
¶ 8 Alice died on December 13, 2004. Shortly after Alice's death, McDaniel searched Alice's home to locate her will. McDaniel found the 2004 Will, but it was not signed. McDaniel could not find the original 1991 Will. The value of the airplane and airplane memorabilia collection is between $400,000 and $1.5 million. The remainder of Alice's estate exceeds $250,000 in value.
¶ 9 On December 21, 2004, Alison filed a petition requesting the court appoint a personal representative and attached a copy of the 1991 Will. In the petition Alison stated that her mother had "executed a will on October 21, [1991]," but that the original 1991 Will could not be found. Alison also stated that "[n]o will belonging to the Decedent has been found, although Co-Petitioners know that Decedent executed a valid last will."[1] The court granted Alison's request and appointed James Schermer as the personal representative of Alice's estate.
¶ 10 On February 18, 2005, the Museum of Flight (Museum) filed a "Petition for Order Admitting Lost Will to Probate RCW 11.20.020,.20.070, .28.185." The Museum asked the court to admit a copy of the 1991 Will to probate as provided in the probate statute and under the lost or destroyed will statute, RCW 11.20.070. As part of the Petition, the Museum filed a copy of the 1991 Will, an Affidavit of Attesting Witnesses in Proof of Will, a Certificate of Witness Debra Fraser, a Certificate of Notary, two declarations from Beth McDaniel, and a copy of the 2004 Will. The court found there was no evidence that Alice intended to revoke the 1991 Will, no known statements concerning her intent to revoke the 1991 Will and no evidence that she intended to die intestate. The superior court decided the 1991 Will was a "lost or destroyed Will and was lost or destroyed under circumstances not amounting to a revocation" and granted the Museum's petition to admit a copy of the 1991 Will to probate. Alison appeals the order admitting the 1991 Will to probate.

ANALYSIS

Standard of Review
¶ 11 The parties disagree about the appropriate standard of review. The court's decision to admit the 1991 Will to probate under RCW 11.20.070 was based exclusively on the written record. Decisions based on declarations, affidavits and written documents are reviewed de novo. In re Estate of Nelson, 85 Wash.2d 602, 605-06, 537 P.2d 765 (1975) (where the trial court did not have an "opportunity to assess the credibility or weight of conflicting evidence by hearing live testimony," appellate review of factual findings and legal conclusions is de novo).[2] *919 Courts have also recognized that probate proceedings are equitable in nature and reviewed de novo on the entire record. In re Estate of Black, 153 Wash.2d 152, 161, 102 P.3d 796 (2004); In re Estate of Ney, 183 Wash. 503, 505, 48 P.2d 924 (1935); In re Estate of Black, 116 Wash.App. 476, 483, 66 P.3d 670 (2003).[3]

Admission of Will Under RCW 11.20.070
¶ 12 Alison challenges the superior court decision to admit the lost or destroyed 1991 Will to probate under RCW 11.20.070.
¶ 13 RCW 11.20.070 provides:
(1) If a will has been lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will, the court may take proof of the execution and validity of the will and establish it, notice to all persons interested having been first given. The proof must be reduced to writing and signed by any witnesses who have testified as to the execution and validity, and must be filed with the clerk of the court.
(2) The provisions of a lost or destroyed will must be proved by clear, cogent, and convincing evidence, consisting at least in part of a witness to either its contents or the authenticity of a copy of the will.
(3) When a lost or destroyed will is established under subsections (1) and (2) of this section, its provisions must be distinctly stated in the judgment establishing it, and the judgment must be recorded as wills are required to be recorded. A personal representative may be appointed by the court in the same manner as is herein provided with reference to original wills presented to the court for probate.[4]
¶ 14 To admit a lost will under RCW 11.20.070, the proponent must comply with the statutory requirements. Black, 153 Wash.2d at 174, 102 P.3d 796 (examining the statute as a whole and broadly applying the clear, cogent, and convincing burden of proof provided in subsection (2) to the execution of the will in subsection (1)). The burden of proof for admitting a lost will under RCW 11.20.070 is "`clear, cogent, and convincing evidence.'" Id.
¶ 15 Here, there is no dispute concerning compliance with the statutory requirements of RCW 11.20.070(2) and (3). The parties do not contest that the 1991 Will is authentic and the provisions are established by clear, cogent and convincing evidence. Nor is there any dispute that the 1991 Will was properly executed and that the provisions are "distinctly stated in the judgment establishing it," RCW 11.20.070(3).[5] The dispute is whether the requirements of RCW 11.20.070(1) are met.
¶ 16 Alison argues the court erred in admitting the 1991 Will to probate because the Museum failed to prove that the 1991 Will was "lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will," as required by RCW 11.20.070(1).[6] Alison contends *920 the 1994 legislative amendment of RCW 11.20.070(1) incorporates the common-law presumption that a lost or destroyed will is revoked and because that presumption applies to the 1991 Will, the superior court's conclusion that the 1991 Will was not revoked is erroneous.
¶ 17 The previous version of RCW 11.20.070 incorporated the long-standing common-law presumption of revocation: "where a will which has been proven to have once been in existence can not be found after the death of the testator, the law presumes that it was destroyed by the testator animo revocandi." In re Estate of Auritt, 175 Wash. 303, 308, 27 P.2d 713 (1933); see also Nelson, 85 Wash.2d at 607, 537 P.2d 765 (recognizing that the language in RCW 11.20.070 (1993) was a codification of the common-law presumption of revocation).[7]
¶ 18 In 1994, the Legislature deleted the following language from RCW 11.20.070:
No will shall be allowed to be proved as a lost or destroyed will unless it is proved to have been in existence at the time of the death of the testator, or is shown to have been destroyed, canceled or mutilated in whole or in part as a result of actual or constructive fraud or in the course of an attempt to change the will in whole or in part, which attempt has failed, or as the result of a mistake of fact . . . .[8]
The Legislature replaced the deleted language with the current language in the statute:
If a will has been lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will, the court may take proof of the execution and validity of the will and establish it, notice to all persons interested having been first given. The proof must be reduced to writing and signed by any witnesses who have testified as to the execution and validity, and must be filed with the clerk of the court.[9]
¶ 19 There is no indication that the Legislature intended to supersede the presumption of revocation with the 1994 amendment.[10] "The Legislature is presumed to be familiar with judicial interpretations of statutes, and absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions." Pudmaroff v. Allen, 138 Wash.2d 55, 64-65, 977 P.2d 574 (1999). We conclude the 1994 amendment to RCW 11.20.070(1) did not abandon the common-law presumption that a lost or destroyed will is revoked. As amended, the statute requires the proponent of a lost or destroyed will to prove it was not revoked.
¶ 20 The Museum does not dispute the common-law presumption of revocation is still applicable to a lost or destroyed will under RCW 11.20.070(1). The parties also agree that under the common-law presumption the 1991 Will was lost or destroyed by Alice, animo revocado. And although this presumption can be rebutted with evidence of the "testator's attitude of mind, as indicated by his declarations made between the time of executing the will and the time of his death," no evidence rebuts the presumption that Alice intended to revoke her 1991 Will and replace it with the 2004 Will. Auritt, 175 Wash. at 308, 27 P.2d 713. But the Museum contends the doctrine of dependent relative revocation supports the decision to admit the 1991 Will to probate under RCW 11.20.070(1) because clear, cogent and convincing evidence supports the conclusion that Alice did not intend to revoke the 1991 Will and die intestate.
¶ 21 By April 2004, Alice was estranged from Alison and she retained McDaniel to take legal action to obtain the items Alison took from her safety deposit box. In August 2004, McDaniel returned the items recovered *921 from Alison, including the original 1991 Will. In August 2004, Alice asked McDaniel to draft a new will eliminating the trust for Alison, leaving the remainder of her estate to her cousins, not Alison, and leaving Alison only a $500 gift. According to McDaniel, Alice was adamant about the gift to the Museum and did not want to change the bequest to the Museum. The 2004 Will also clearly states, "I, ALICE M. BOWERS, make, publish and declare this to be my Last Will and Testament, revoking all Wills and Codicils at any time heretofore made by me."[11] The evidence clearly supports the presumption that Alice intended to revoke the 1991 Will and replace it with the 2004 Will. But we also conclude the same evidence supports application of the doctrine of dependent relative revocation. See In re Estate of Hall, 7 Wash.App. 341, 343, 499 P.2d 912 (1972) ("In will contests intent of the testator is the controlling factor.").
¶ 22 For the doctrine of dependent relative revocation to apply, a party must show an "immediate intent to make a new testamentary disposition and [a] conditional [revocation] of the original will." Hall, 7 Wash.App. at 343, 499 P.2d 912. Under the doctrine of dependent relative revocation, courts presume that the testator would have preferred the revoked will over "the intestacy brought about by the unforeseen thwarting of the attempted later alternative disposition." In re Estate of Kerckhof, 13 Wash.2d 469, 473, 125 P.2d 284 (1942). "[A]nd there can be no real intent to revoke when the act of destruction or cancellation is induced and motivated by a mental misconception of the effect of the act on account of ignorance, or mistake, or some other error." Id.
¶ 23 Here, clear, cogent and convincing evidence establishes Alice did not intend to die intestate and her intent to revoke the 1991 Will was conditioned on the validity of the 2004 Will. See In re Estate of Banks, 56 Wash.2d 139, 142, 351 P.2d 531 (1960) (holding the trial court properly applied the doctrine of dependent relative revocation after recognizing there was no evidence that the decedent intended to die intestate); In re Estate of Becklund, 7 Wash.App. 10, 14, 497 P.2d 1327 (1972) (recognizing the presumption against intestacy and the "presumption that a testator intends to dispose of his entire estate rather than die intestate as to any portion").
¶ 24 There is no dispute Alice did not intend to die intestate and no dispute Alice did not want Alison to receive the airplane and airplane memorabilia collection. Alice attempted to change her 1991 Will with a new disposition in the 2004 Will that affected the remainder interest but did not change the gift to the Museum. The evidence also clearly establishes Alice always wanted the Museum to receive Peter's airplane and airplane memorabilia collection.
¶ 25 Alison's reliance on In re Estate of Hall is misplaced. In Hall, the decedent executed a will that was no longer in existence at his death and made "statements to the effect that he had destroyed the [1969] will." Hall, 7 Wash.App. at 342-43, 499 P.2d 912. Although there was evidence that the decedent attempted to execute another will subsequent to the 1969 will, the court found the doctrine of dependent relative revocation did not apply because there was "no direct or circumstantial evidence introduced sufficient to show the necessary element of conditional will destruction." Id. at 343, 499 P.2d 912. The court in Hall specifically noted:
By showing that testator's second will was executed concurrently with or shortly after the destruction of the [1969] will, petitioner Hall might have shown such conditional destruction. Likewise, by a showing that the second will was similar to the [1969] will in content, Hall could have provided some circumstantial evidence of a conditional will destruction.[12]
¶ 26 Unlike Hall, there is no evidence of statements by Alice that she intended to destroy the 1991 Will. Rather, there is clear, cogent, and convincing evidence that Alice did not intend to die intestate and that revocation of the 1991 Will was conditioned on the validity of the 2004 Will. In addition, the *922 disposition in the 2004 Will was similar to the 1991 Will. Although Alice made significant changes in the 2004 Will as to the remainder of her estate, there was no change in her explicit intent to leave the Museum the valuable airplane collection.[13] On this record, the doctrine of dependant relative revocation rebuts the presumption of revocation of the 1991 Will and the Museum met its burden of proving under RCW 11.20.070(1) that the will was "lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will."
¶ 27 Alison next argues that the Museum's petition to admit the 1991 Will to probate failed to specifically plead the will was "lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will" under RCW 11.20.070(1). Alison concedes RCW 11.20.070 is the only means to admit a lost or destroyed will to probate and nothing in RCW 11.20.070 requires a petitioner to specifically plead particular language from the statute, but contends the Petition was insufficient and did not comply with the statute.
¶ 28 While pleadings are liberally construed, they must give notice of the general nature of the claim asserted. Northwest Line Constructors Chapter of the Nat'l Elect. Contrs. Ass'n v. Snohomish County Pub. Util. Dist. No. 1, 104 Wash.App. 842, 849, 17 P.3d 1251. 104 Wash.App. 842, 17 P.3d 1251 (2001). A pleading is insufficient when it does not give the opposing party fair notice of the claim. Id.
¶ 29 In the three cases Alison cites, the court held the complaint did not provide sufficient notice of the plaintiff's legal theories. Lightner v. Balow, 59 Wash.2d 856, 857, 370 P.2d 982 (1962) (addressing the sufficiency of an initial complaint for personal injury); Elec. Contractors, 104 Wash.App. at 849, 17 P.3d 1251 (addressing the sufficiency of an initial complaint for violation of free speech); Chen v. State, 86 Wash.App. 183, 193, 937 P.2d 612 (1997) (addressing the sufficiency of an initial complaint for hostile work environment).
¶ 30 The title of the Petition filed by the Museum, "PETITION FOR ORDER ADMITTING LOST WILL TO PROBATE RCW 11.20.020,.20.070,.28.185", clearly cites to the lost and destroyed will and the probate statutes and provides notice that the Museum sought to admit the 1991 Will to probate as a lost will under RCW 11.20.070. In addition, the Museum filed the 1991 Will, two declarations from McDaniel, a notary certification of the 1991 Will and the 2004 Will as part of the Petition.

CONCLUSION
¶ 31 We conclude the doctrine of dependent relative revocation rebuts the presumption that Alice intended to revoke her 1991 Will and die intestate. Clear, cogent and convincing evidence supports the conclusion that revocation was conditioned on the validity of the 2004 Will. We affirm the order admitting the lost will to probate under RCW 11.20.070.
WE CONCUR: AGID and COLEMAN, JJ.
NOTES
[1] David Bowers, Alice's stepson was a co-petitioner.
[2] (Citing Smith v. Skagit County, 75 Wash.2d 715, 718, 453 P.2d 832 (1969); Carlson v. Bellevue, 73 Wash.2d 41, 48, 435 P.2d 957 (1968)).
[3] The parties also dispute whether an order admitting a lost will to probate is appealable as a matter of right. Although it appears that under In re Halle's Estate, 29 Wash.2d 624, 631-32, 188 P.2d 684 (1948), an order admitting a lost will to probate is appealable as a matter of right, we need not definitively decide this issue because we conclude discretionary review is appropriate under RAP 2.3(b)(4). Under RAP 2.3(b)(4) if "all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation," discretionary review can be granted. Here, the parties agree that the superior court order admitting the 1991 Will to probate is a controlling question that warrants immediate review and will advance the termination of the litigation. Accordingly, we grant discretionary review under RAP 2.3(b)(4).
[4] (Emphasis added).
[5] The Museum submitted a notary certification with the 1991 Will.
[6] A will can be revoked in the following manner:

(a) By a subsequent will that revokes, or partially revokes, the prior will expressly or by inconsistency; or
(b) By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator or by another person in the presence and by the direction of the testator. If such act is done by any person other than the testator, the direction of the testator and the facts of such injury or destruction must be proved by two witnesses.
RCW 11.12.040(1).
[7] The previous language also set forth an exhaustive list of circumstances to rebut the presumption of revocation.
[8] RCW 11.20.070 (1993) (emphasis added), amended by Laws of 1994, ch. 221, § 20.
[9] RCW 11.20.070(1).
[10] Because the language is clear and unambiguous, we need not engage in a lengthy statutory interpretation analysis. See Berger v. Sonneland, 144 Wash.2d 91, 105, 26 P.3d 257 (2001) (recognizing courts should not engage in statutory interpretation if a statute's language is unambiguous).
[11] (Emphasis added).
[12] In re Estate of Hall, 7 Wash.App. at 343, 499 P.2d 912, (emphasis added).
[13] Alison's reliance on In re Estate of Becklund, 7 Wash.App. 10, 497 P.2d 1327 (1972), is also misplaced. Here, unlike Becklund, we have extrinsic evidence from McDaniel's declarations, to ascertain Alice's intent. Furthermore, the Becklund court found that the partial revocation failed and the doctrine of dependent relative revocation applied. See Becklund, 7 Wash.App. at 19, 497 P.2d 1327 (citing In re Estate of Kerckhof, 13 Wash.2d 469, 473, 125 P.2d 284 (1942)).