# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Petition of BARNES MICHAEL WARE to Convene a Grand Jury. | No. 50285-2-II (Consolidated with: No. 50877-0-II) |
| In the Matter of the Application of ERIKA JOHNSON for a Citizen's Complaint. | PUBLISHED OPINION |

LEE, J. — Following the Lewis County Prosecuting Attorney's Office's decision to not file charges in an animal abuse case, two private citizens separately sought to independently initiate criminal charges. In the first case, Erika Johnson filed a petition in district court, requesting authorization to file a citizen's complaint. After the district court denied Johnson's petition, Barnes Michael Ware filed a petition to summon a grand jury in superior court, based on the same set of facts underlying Johnson's petition. The superior court similarly denied Ware's petition. In these consolidated appeals, the appellants argue that the lower courts erred in finding that granting their petitions would unconstitutionally violate the separation of powers. Johnson also argues that the superior court, on review of the district court's decision, erred in finding that the prosecutorial standards did not warrant the filing of criminal charges through her petition.

We hold that the district court did not abuse its discretion in denying Johnson's petition. We also hold that the superior court did not abuse its discretion in denying Ware's petition. Accordingly, we affirm the district court's dismissal of Johnson's petition for issuance of a

citizen's complaint, and we affirm the superior court's dismissal of Ware's petition to summon a grand jury.

FACTS

A.    THE INCIDENT

On April 28, 2016, the Centralia Police Department responded to a report of animal abuse at a Centralia apartment complex. The reporting party, Samantha Riggen, told officers that her neighbors had tortured and killed her mother's cat by throwing a rock at the cat and stabbing the cat with a knife.

Officer William D. Phipps of the Centralia Police Department arrived on scene and was met by a large group of residents from the apartment complex. Officer Phipps interviewed four witnesses to the incident—one adult and three children. The adult, Alicia Schroeder, told Officer Phipps that her daughter had come to her and told her that two men "were going to stab the cat." Clerk's Papers (CP) at 29. Schroeder then ran to the back of the apartment complex and saw a man she identified as Kyle Burke stab the cat in the neck and attempt to push the cat under a chain link fence.

The three juvenile witnesses who witnessed the incident told Officer Phipps that Emily Miller, another juvenile who lived in the apartment complex, had squeezed the cat, refused to let go, and twice threw the cat up toward her mother, who was standing on a second floor balcony. The girls informed Officer Phipps that at some point Burke threw a rock at the cat. After the cat fell to the ground, the girls reported seeing Burke and a man identified as Richard Allshouse running toward the cat with a knife. According to the girls, the two men were arguing about who

would get to kill the cat first. The girls told Officer Phipps that Burke stabbed the cat and then shoved its body under a fence.

Based on this information, Officer Phipps determined that there was probable cause to arrest Burke for first degree animal cruelty. Officer Phipps placed Burke under arrest and had him transported to Lewis County Jail.

Officer Phipps then went to the back of the apartment building and discovered that the cat's body had been removed from the fence and placed in a plastic garbage bag. Officer Phipps removed the cat's body from the bag and photographed its remains. Officer Phipps reported that "[t]he only injury to the cat appeared to be to its head due to bleeding from the mouth and ears," and "[b]ecause of the blood I could not tell if there was a stab wound in its ears or not." CP at 30.

Officer Phipps filled out an incident report detailing the facts set out above. His report requested that this case be forwarded to the Lewis County Prosecuting Attorney's Office.

B. PROSECUTOR'S OFFICE DECLINES TO FILE CHARGES

On April 29, the Lewis County Prosecuting Attorney's Office sent a letter to the Centralia Police Department, informing them that the prosecutor's office was declining to file charges in this case. In the letter, the prosecutor's office explained that Burke's "actions related to the animal's death are unclear, at best, and he denied even causing the death." CP at 62. The letter further explained that, "One account is that Mr. Burke stabbed the cat in the neck; however, when Officer Phipps examined the cat's body, he was not able to locate any stab wounds." CP at 62.

The letter also stated that the prosecutor's office found the accounts of the three juvenile witnesses to be the most credible and unbiased. However, those witness accounts "related that another juvenile female caused the cat a substantial amount of suffering prior to Mr. Burke ever becoming involved." CP at 62. Specifically, the three juvenile witnesses stated that before Burke arrived on scene, "the cat had been brutally squeezed, had been thrown or dropped from a second story balcony at least twice, and had a stone dropped upon or thrown against its head." CP at 62. The prosecutor's office stated that given these facts, it did not believe it would be possible to prove to a jury beyond a reasonable doubt that Burke committed first degree animal cruelty.

The prosecutor's office also cited the evidentiary issues in the case; namely, that the cat's body was not collected at the scene. Without the body, the prosecutor's office would be unable to show how the cat died. The letter explained that any effort to recover the cat's body at this point in the investigation would be fruitless because the cat's body could have been tampered with since the incident occurred.

The letter concluded, "What happened to this animal was deplorable, inhumane, and without justification. Nevertheless, I cannot charge Mr. Burke with causing these harms without solid evidence that he is the individual who caused them." CP at 63.

4

C.      SUBSEQUENT INVOLVEMENT OF PRIVATE PARTIES

1.      Barnes Michael Ware

Barnes Michael Ware is a retired police officer.  His wife, Mary Ware,[1] followed the incident involving the cat on Lewis County Sirens.[2]  When Mary discovered that the cat's body had not been taken into evidence, she offered to take the cat and have him cremated.

On April 29, Ware and Mary went to the apartment complex to retrieve the cat's body. There, the two discovered that the cat's body had already been removed from the trash and placed into a garbage bag inside a cardboard box.[3]  Neither opened the box, but Ware had Schroeder initial and date the box to show when he took charge of the box.  Ware and Mary returned to their residence and placed the box inside a spare refrigerator in their garage.

The next day, Ware met with Erika Johnson of Thurston County Animal Services at an animal hospital in Olympia.  Ware signed and dated the box when he released it into Johnson's custody.

2.      Erika Johnson

Johnson is a former police officer and deputy sheriff in the State of Oregon.  At the time of this incident, Johnson worked as an animal services officer with Thurston County.

---

[1] For clarity, this opinion refers to Barnes Michael Ware by his last name and Mary Ware by her first name.  We intend no disrespect.

[2] Lewis County Sirens is an online "independent local news provider," which provides news of "crime, police, fire and courts" in greater Lewis County, Washington.  LEWIS COUNTY SIRENS, http://www.lewiscountysirens.com/ (last visited June 18, 2018).

[3] The record does not show who removed the cat's body from the trash, nor does it show when this occurred.  CP at 32.

After Ware gave Johnson the box containing the cat's body, Johnson took the box and turned it over to an animal hospital to conduct a necropsy.[4] The report following necropsy stated, "To summarize the injuries, the cat suffered severe head and neck trauma. The exact cause of death is either skull fracture, penetrating brain trauma, cervical spinal fracture or possibly choking, due to the deep contusions and hemorr[h]age within the wall of the trachea and cervical deep tissues." CP at 33.

On June 28, Johnson met with the prosecutor's office and the Centralia Police Chief. The purpose of the meeting was to discuss the prior charging decision in the case. At the meeting, the prosecutor's office told Johnson that it did not believe there was sufficient evidence to prove Burke's intent. The prosecutor's office also informed Johnson that it had referred Miller to the Juvenile Division. The prosecutor's office reiterated that it would not be filing charges in this case.

3. Animal Legal Defense Fund

On November 22, the Animal Legal Defense Fund (ALDF)[5] sent a letter to the prosecutor's office, urging the prosecutor's office to bring charges against Burke. In the letter, the ALDF outlined charging theories that it believed the prosecutor's office could pursue. The letter then explained how the necropsy report supported those charging theories.

---

[4] Necropsy is an autopsy performed on an animal. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1511 (2002).

[5] The ALDF is a nonprofit attorney organization dedicated to protecting and advancing the interests of animals through the legal system. ANIMAL LEGAL DEFENSE FUND, http://aldf.org/about-us/ (last visited June 18, 2018).

The prosecutor's office responded to the letter, explaining that it had again reviewed the results of the necropsy, but was still declining to file charges. The prosecutor's office explained that "[n]othing in the report leads to any reliable, admissible evidence that Mr. Burke's actions constitute a crime beyond a reasonable doubt. What he did is, frankly, horrific. However, the report itself cannot pinpoint, with certainty, what caused the death in this case." CP at 70.

The prosecutor's office informed the ALDF that it takes animal cruelty cases very seriously, but also "must be mindful of the admissible evidence, the mandates imposed by statutes and the burden of proof." CP at 70. The prosecutor's office reiterated that it was declining to file charges in this case.

D.      PRIVATE CITIZEN PETITIONS

1.      Johnson's Petition

a.      Filing in District Court

On December 20, Johnson filed a petition for issuance of a citizen's complaint under CrRLJ 2.1 (c). Under CrRLJ 2.1(c):

> Any person wishing to institute a criminal action alleging a misdemeanor or gross misdemeanor shall appear before a judge empowered to commit persons charged with offenses against the State, other than a judge pro tem.
>
> . . . .
>
> In addition to probable cause, the court may consider:
>
> (1) Whether an unsuccessful prosecution will subject the State to costs or damage claims under RCW 9A.16.110, or other civil proceedings;
>
> (2) Whether the complainant has adequate recourse under laws governing small claims suits, anti-harassment petitions or other civil actions;

7

(3) Whether a criminal investigation is pending;

(4) Whether other criminal charges could be disrupted by allowing the citizen complaint to be filed;

(5) The availability of witnesses at trial;

(6) The criminal record of the complainant, potential defendant and potential witnesses, and whether any have been convicted of crimes of dishonesty as defined by ER 609; and

(7) Prosecution standards under RCW 9.94A.440.

If the judge is satisfied that probable cause exists, and factors (1) through (7) justify filing charges . . . the judge may authorize the citizen to sign and file a complaint.

Johnson argued that probable cause existed for filing charges of second degree animal

cruelty,[6] taking, concealing, injuring, and killing of a pet animal,[7] third degree malicious mischief,[8]

---

[6] A person is guilty of second degree animal cruelty "if, under circumstances not amounting to first degree animal cruelty, the person knowingly, recklessly, or with criminal negligence inflicts unnecessary suffering or pain upon an animal." RCW 16.52.207(1).

[7] Under RCW 9.08.070 (1)(c), a person is guilty of taking, concealing, injuring, killing a pet animal if he or she "[w]illfully or recklessly kills or injures any pet animal, unless excused by law."

[8] Under RCW 9A.48.090(a), a person commits third degree malicious mischief by "[k]nowingly and maliciously caus[ing] physical damage to the property of another, under circumstances not amounting to malicious mischief in the first or second degree."

and criminal conspiracy.[9] Johnson sought to have criminal charges filed against Allshouse, Burke, Miller, and Miller's mother, Tina Miller.[10]

In support of her petition, Johnson filed several declarations of witnesses to the event. Johnson also filed a personal declaration in which she detailed her background in investigating animal abuse cases and declared that probable cause existed for the criminal charges she proposed.

The State filed a response in which it explained that the Lewis County Juvenile Court had exclusive jurisdiction over Miller because she was under 12 years old at the time of the incident. As to the other proposed defendants, the State argued that there was not enough evidence to prove criminal activity beyond a reasonable doubt.

On December 27, the district court entered an oral ruling denying Johnson's petition to issue a citizen's complaint. The district court ruled, "I don't need to hear from any witnesses . . . the matters were briefed very well by both sides." CP at 141. The court stated, "I have looked at the rule, I have read all the briefing, made an evaluation of probable cause for all the suggested crimes put forth by [Johnson's trial counsel] and Ms. Johnson, weighed the petition against any prosecutorial standards under 9.94A.411, both to prosecute and not to prosecute." CP at 141.

The district court further explained that it had "entertained other equitable considerations such as the motivation of the complaining party" and "taken into consideration the professional

---

[9] Under RCW 9A.28.040(1), "A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement."

[10] For clarity, this opinion refers to Emily Miller by her last name and Tina Miller by her first name. We intend no disrespect.

determination of the Lewis County Prosecutor's Office." CP at 141. The district court found that there was "no willful disregard on behalf of the state of their oath or their duties, that this matter was fully investigated both by the government and the assistance of private citizens." CP at 142. As a result, the district court ruled that it was "not going to allow the petition to proceed or sign the complaint." CP at 142.

### b. Appeal to Superior Court

Johnson appealed the district court's denial of her petition for issuance of a citizen's complaint to the superior court under RALJ 2.2 and RALJ 2.6. In her appeal, Johnson stated the assigned errors "include, but are not limited to, the court's undifferentiated and nonspecific conclusion denying Ms. Johnson the right to file any charge against any of the potential defendants under any of those statutes." CP at 265-66. Johnson argued that "[w]hile the superior court conducts *de novo* review, Ms. Johnson nonetheless alleges that Judge Buzzard committed clear error and abused his discretion." CP at 266. Johnson also argued that "nothing presented by Ms. Johnson or [the prosecutor's office] warranted denial of the petition." CP at 285. She further argued that prosecutorial standards under RCW 9.94A.411(2)(a)[11] "mandated filing in this instance." CP at 286.

In response, the State filed a motion to dismiss Johnson's RALJ appeal, arguing that there was no appealable order because the district court ruling was made orally. The State also argued

---

[11] Under RCW 9.94A.411(2)(a), "Crimes against property/other crimes will be filed if the admissible evidence is of such convincing force as to make it probable that a reasonable and objective fact finder would convict after hearing all the admissible evidence and the most plausible defense that could be raised."

that Johnson was not the party in interest and could not appeal the decision because she was not an aggrieved party under RALJ 2.1(a).[12]  Finally, the State raised for the first time a constitutional challenge to CrRLJ 2.1(c).  Specifically, the State argued that if the superior court were to overturn the district court's ruling, then it would be "overstepping into the exclusive authority vested by the Washington State Constitution in the county prosecutor" and violate the separation of powers.  CP at 292-93.

The superior court found that the district court's order denying Johnson's complaint was a final order because the decision terminated the case.  The superior court further held that Johnson was an aggrieved party and, therefore, had standing to proceed under RALJ.

The superior court then applied de novo review to the district court's ruling, finding that there was probable cause to believe that the individuals Johnson named had committed second degree animal cruelty, taking, concealing, injuring or killing a pet, and third degree malicious mischief.  In considering the other factors enumerated in CrRLJ 2.1(5)(c), the superior court held that nothing in the record suggested that an unsuccessful prosecution would subject the State to costs or damage claims and that Johnson may or may not have alternative recourse under the laws. The superior court also found that it did not appear that other criminal charges would be disrupted by allowing a citizen's complaint to be filed.

However, the superior court held that the most persuasive factor was consideration of the prosecution standards under RCW 9.94A.411, which provides that crimes "will be filed if the admissible evidence is of such convincing force as to make it probable that a reasonable and

---

[12] Under RALJ 2.1(a), "Only an aggrieved party may appeal."

11

objective fact finder would convict after hearing all the admissible evidence and the most plausible defense that could be raised." The superior court agreed that "considering the multiple persons who inflicted injury to the animal, the varying witness statements which a competent defense attorney could discredit, and the inexact determination of which wound or wounds contributed to the suffering and death of the cat," the evidence was not of such convincing force to make it probable that a reasonable and objective fact finder would convict. CP at 322.

The superior court also ruled, "Additionally, in that CrRLJ 2.1(c) allows the District Court to authorize the filing of criminal charges by a party other than the prosecuting attorney, it unconstitutionally violates the separation of powers doctrine." CP at 322. The superior court relied on *State v. Rice*, 174 Wn.2d 884, 279 P.3d 849 (2012) to hold that another branch of government "cannot interfere with the core function that essentially defines a prosecuting attorney: the exercise of broad charging discretion on behalf of the local community." CP at 322. Accordingly, the superior court affirmed the district court's denial of Johnson's petition for issuance of a citizen's complaint.

2.      Ware's Petition

The same day the district court denied Johnson's petition for issuance of a citizen complaint, Ware filed a petition to summon a grand jury under RCW 10.27.030. Ware's petition contained the identical 10 pages of factual background as Johnson's petition.

Under RCW 10.27.030:

> No grand jury shall be summoned to attend at the superior court of any county except upon an order signed by a majority of the judges thereof. A grand jury shall be summoned by the court, where the public interest so demands, whenever in its opinion there is sufficient evidence of criminal activity or

corruption within the county or whenever so requested by a public attorney, corporation counsel or city attorney upon a showing of good cause.

In his petition, Ware argued that "the public interest demands convening of a grand jury" and that "[t]he Lewis County Prosecuting Attorney's Office's decision not to charge Kyle Bobby Burke raises a question of grave public concern." CP at 2. Ware further argued that there was sufficient evidence of criminal activity to warrant submission to a grand jury. Specifically, Ware argued that there was sufficient evidence that Burke committed first degree animal cruelty[13] because there was evidence that Burke inflicted substantial pain and caused physical injury to the cat. In support, Ware attached declarations of the five witnesses to the incident, which showed that Burke stabbed the cat and that the cat was seen moving following the stabbing.

The State filed a response, arguing that the superior court should not convene a grand jury and should dismiss Ware's petition. The State noted that Ware filed his petition within an hour of the district court's ruling dismissing Johnson's petition for the issuance of a citizen's complaint. The State also argued that Ware's petition was contrary to the purpose of grand juries, which are "to serve law enforcement in combating crime and corruption." CP at 85 (quoting RCW 10.27.010). The State reiterated that it did not believe that there was sufficient admissible evidence in this case to sustain a criminal conviction.

---

[13] RCW 16.52.205(1) states that "[a] person is guilty of animal cruelty in the first degree when, except as authorized by law, he or she intentionally (a) inflicts substantial pain on, (b) causes physical injury to, or (c) kills an animal by a means causing undue suffering or while manifesting extreme indifference to life, or forces a minor to inflict unnecessary pain, injury, or death on an animal."

The State also argued that Ware did not have standing to bring the petition because there was no evidence he owned the cat or that he lived in Lewis County. Though Johnson was not a petitioner in this case, the State also challenged Johnson's standing to bring a petition to summon a grand jury.

In reply to the State's response, Ware asserted that he had standing to bring the claim because he "has paid local sales tax." CP at 106. He further argued that RCW 10.27.030 does not require he show residency in the county he seeks to file charges. CP at 106-07. Ware further argued that "[t]he use of the phrase 'public interest' in RCW 10.27.030 contemplates that any member of the general public may petition the court." CP at 107.

Two days after Ware filed his reply to the State's response, the State filed a supplemental brief in opposition to a grand jury. There, the State argued that RCW 10.27.030 does not allow private citizens or private attorneys to petition the court to convene a grand jury. The State then asserted, for the first time, a constitutional challenge to Ware's petition. The State argued that Ware's petition "constitute[ed] an unauthorized intrusion into the constitutional powers of the elected prosecutor." CP at 113. The State further argued that convening a grand jury by the superior court at the request of a private citizen, without involvement of the county prosecutor, was "an improper encroachment of the judicial branch on the executive branch." CP at 113.

Ware filed a surreply, and, in addition to addressing the State's arguments, asserted that the State was not a party to this action and, therefore, had no right to file either its responsive brief or its supplemental brief in superior court. Ware asked the court to disregard both of the State's responsive briefings.

14

On April 21, 2017, the superior court entered an order denying Ware's petition to summon a grand jury. The superior court found that

> Ware does not specifically allege corruption within the county, but rather focuses on the criminal activity of one particular individual: Kyle Bobby Burke. Thus, we focus our inquiry on whether Burke was involved in criminal activity within the county, and whether the public interest demands that a grand jury be summoned to investigate this criminal activity.

CP at 129.

The superior court acknowledged that "the death of [the cat] involved criminal conduct is not disputed." CP at 129. The superior court then considered the involvement of the prosecutor's office in investigating case and its reasons for declining to file charges. The superior court ruled that "Ware . . . asks us to summon a grand jury, with the obvious objective of indicting Burke on criminal charges. We decline this invitation because doing so would invade the Prosecuting Attorney's Office's discretion, vested by the Washington State Constitution." CP at 130.

The superior court further ruled, "Mindful that our Supreme Court continues to recognize the unique and exclusive power vested in the prosecuting attorney to exercise discretion as to which individuals are charged and with which offenses, we hereby determine that to usurp this executive power does not serve the public." CP at 131. The superior court concluded that its ruling did not shield the elected prosecutor from public review because "prosecuting attorneys are accountable to the voting public—a bedrock of Democracy, as is the fundamental principal of separation of powers, which underlies our decision." CP at 131.

E.     APPELLATE HISTORY

Ware filed a notice of appeal to this court, seeking review of the superior court's denial of his petition to summon a grand jury. Johnson filed a petition for review with the Washington Supreme Court, seeking review of the district court's order denying her petition and the superior court's order affirming the district court's denial of her petition for the issuance of a citizen's complaint.

The State filed a motion in the Supreme Court to consolidate Johnson's appeal with Ware's appeal under RAP 3.3(b). The court granted the motion to consolidate and ordered this court to consider both appeals.

ANALYSIS

A.     JOHNSON'S PETITION TO FILE A CRIMINAL CITIZEN'S COMPLAINT[14]

Johnson assigns error to the superior court's ruling affirming the district court's dismissal of her petition to file a citizen's complaint. Johnson contends that the superior court erred in (1) declaring CrRLJ 2.1(c) unconstitutional facially and as applied, and (2) finding that the statutory prosecutorial factors did not warrant the filing of criminal charges in this case. We hold that the district court did not abuse its discretion in denying Johnson's petition to file a citizen's complaint.

---

[14] On appeal, the State challenges both Johnson and Ware's standing to appeal the superior court order as aggrieved parties. In Johnson's case, the State challenged Johnson's standing for the first time on appeal. In affirming the district court's ruling, the superior court held that Johnson was an aggrieved party and had standing to appeal denial of her petition. In Ware's case, the superior court never addressed the State's standing argument, but instead decided the case on the merits. Ware argues that the State waived its standing challenge. We exercise our discretion to review this appeal on its merits. RAP 1.2(a).

16

1.      Standard of Review

"Appellate review of a district court's ruling, here and in the superior court, is governed by the standards contained in the Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ)." *State v. Thomas*, 146 Wn. App. 568, 571, 191 P.3d 913 (2008), *review denied* 165 Wn.2d 1046 (2009).  On review, this court "shall accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction."  RALJ 9.1(b).

We find that the applicable standard in reviewing the denial of a petition to file a citizen's complaint under CrRLJ 2.1(c) is abuse of discretion.  In interpreting a court rule, we "must 'give[] effect to the plain language of a court rule, as discerned by reading the rule *in its entirety* and harmonizing *all* of its provisions.' " *State v. Otton*, 185 Wn.2d 673, 683, 374 P.3d 1108 (2016) (alteration in original) (quoting *State v. George*, 160 Wn.2d 727, 735, 158 P.3d 1169 (2007).  " 'Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion.' " *In re Parentage of T.W.J.*, 193 Wn. App. 1, 6, 367 P.3d 607 (2016) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

The plain language of CrRLJ 2.1(c) unambiguously vests the district court with discretion to authorize a citizen to file a citizen complaint.  The rule states that the judge "*may* require the appearance to be made on the record," "*may* consider any allegations on the basis of an affidavit sworn to before the judge," and "*may* also require the presence of other potential witnesses."

CrRLJ 2.1(c) (emphasis added). The rule further states that "[i]n addition to probable cause, the court *may* consider" the seven factors outlined in the court rule. CrRLJ 2.1(c) (emphasis added). Finally, the rule provides that "[i]f the judge is satisfied that probable cause exists, and factors (1) through (7) justify filing charges," then the judge "*may* authorize the citizen to sign and file a complaint." CrRLJ 2.1(c) (emphasis added). Thus, we conclude that the plain language of CrRLJ 2.1(c) warrants an abuse of discretion review. [15]

A superior court abuses its discretion if its decision " ' "is manifestly unreasonable or based upon untenable grounds or reasons." ' " *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230

---

[15] On appeal to the superior court, the superior court applied de novo review to the district court's ruling. The superior court applied de novo review "[b]ecause the ruling below was based on the pleadings and declarations." CP at 321. Johnson argued to the superior court that de novo review applied based on *In re Estate of Bowers*, 132 Wn. App. 334, 339, 131 P.3d 916 (2006). Though the court in *In re Estate of Bowers* held that "[d]ecisions based on declarations, affidavits, and written documents are reviewed de novo," this holding was made in the context of reviewing a court's decision to admit a will to probate based exclusively on the written record. 132 Wn. App. at 339. The *In re Estate of Bowers* court further held that "[c]ourts have also recognized that probate proceedings are equitable in nature and reviewed de novo on the entire record." *Id.* Here, proceedings under CrRLJ 2.1(c) are not equitable in nature. Thus, we do not apply de novo review based on *In re Estate of Bowers*.

CrRLJ 2.1(c) is a court rule governing the procedure for filing a complaint in the courts of limited jurisdiction of the State of Washington. CrRLJ 1.1. De novo review arguably should apply "[b]ecause the application of a court rule to a particular set of facts is a question of law." *Thomas*, 146 Wn. App. at 571. However, we decline to apply the *Thomas* court's reasoning to this case because the *Thomas* court interpreted a district court's application of Washington's time-for-trial rule under CrRLJ 3.3(b)(2), (c)(1). *Id.* at 572. CrRLJ 3.3(b)(2) provides that a defendant "shall be brought to trial" within a certain time frame, and (c)(1) provides that the initial commencement date "shall be the date of arraignment." Thus, neither court rule at issue in *Thomas* contained the discretionary language present in CrRLJ 2.1(c). 146 Wn.2d at 572. Further, neither court rule at issue in *Thomas* gave the district court judge discretion to determine whether the facts of a particular case and applicable factors "justify filing charges." CrRLJ 2.1(c). Therefore, we find that the *Thomas* court's application of de novo review is not controlling here.

18

P.3d 583 (2010) (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998)). A lower court's decision is manifestly unreasonable if the court " 'adopts a view "that no reasonable person would take." ' " *Id.* at 669 (quoting *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)). A court's decision is based on untenable grounds or for untenable reasons if the court " 'applies the wrong legal standard or relies on unsupported facts.' " *Id.* (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

> 2. The District Court did not Abuse its Discretion

Johnson argues that the district court erred in denying her petition to file a citizen's complaint because the prosecutorial standards outlined in RCW 9.94A.411(2)(a)[16] "mandated" filing in this case. We disagree.

Johnson's reliance on the prosecutorial standards of RCW 9.94A.411(2)(a) is misplaced, as nothing in CrRLJ 2.1(c) mandates that the district court allow a citizen complaint to proceed if the court finds that RCW 9.94A.411(2)(a) justifies filing charges. Instead, CrRLJ 2.1(c) states that the judge reviewing the petition "may" consider the prosecution standards. Even if the reviewing judge determines that criminal charges are warranted, CrRLJ 2.1(c) still does not compel the court to allow the citizen's complaint. Instead, the rule provides that the judge "may" then allow the

---

[16] Under RCW 9.94A.411(2)(a), "Crimes against property/other crimes will be filed if the admissible evidence is of such convincing force as to make it probable that a reasonable and objective fact finder would convict after hearing all the admissible evidence and the most plausible defense that could be raised."

citizen to sign and file a complaint. CrRLJ 2.1(c).[17] Thus, the superior court was not required to grant Johnson's petition based on RCW 9.94A.411(2)(a).

Here, the district court applied the standard outlined in CrRLJ 2.1(c) and considered the evidence presented in support of Johnson's petition. The district court looked at the rule, read the briefing, evaluated probable cause for all the suggested crimes in Johnson's petition, and weighed the petition against the prosecutorial standards under RCW 9.94A.411. The district court also "entertained other equitable considerations" required by the rule, including the motivation of the complaining party and whether anyone had been held accountable for any culpable acts in this case. CP at 141. The district court then concluded that "there [was] no willful disregard on behalf of the state" and that "this matter was fully investigated." CP at 142.

Based on these considerations, the district court ruled that prosecution was not in the best interest in this particular case and dismissed Johnson's petition. In its ruling, the district court did not " 'adopt[] a view "that no reasonable person would take." ' " *Salas*, 168 Wn.2d at 668 (quoting *In re Pers. Restraint of Duncan*, 167 Wn.2d at 402-03). Further, the district court did not apply the wrong legal standard or rely on unsupported facts. Thus, we hold that the district court's denial of Johnson's petition was not based on untenable grounds or for untenable reasons, and the district

---

[17] Johnson erroneously interprets RCW 9.94A.411(2)(a) as requiring a prosecutor to file charges every time a prosecutor finds that it is probable that a reasonable and objective fact finder would convict. Johnson bases her argument here on the statutory language "will be filed." Br. of Appellant at 46. In *Rice*, the court held that a statute stating that prosecutors "shall" file a special allegation of sexual motivation when sufficient admissible evidence exists was nonetheless directory because the statute did not attach any consequences if the prosecutor failed to comply. *State v. Rice*, 174 Wn.2d 884, 896, 279 P.3d 849 (2012).

court did not abuse its discretion. Accordingly, we affirm the district court's dismissal of Johnson's petition for issuance of a citizen's complaint.[18]

B.     WARE'S PETITION TO CONVENE A GRAND JURY

Ware asserts that the superior court ruled that allowing his petition to continue was unconstitutional because it violated the separation of powers. In support, Ware quotes the portion of the superior court's ruling finding that petitioning a grand jury in this case would "usurp [the prosecuting attorney's] executive power" and that "the fundamental principal of separation of powers" underlies its ruling. Br. of Appellant at 34. Though inartfully worded, we hold that the superior court never ruled that allowing private citizens to convene grand juries was unconstitutional. Thus, we reject Ware's challenge on this basis.

1.     The Superior Court's Ruling

Ware filed a petition to convene a grand jury under RCW 10.27.030. This statute governs the summoning of grand juries and provides:

> No grand jury shall be summoned to attend at the superior court of any county except upon an order signed by a majority of the judges thereof. A grand jury shall be summoned by the court, where the public interest so demands, whenever in its opinion there is sufficient evidence of criminal activity or

_____

[18] The State raised a constitutional challenge to CrRLJ 2.1(c) for the first time on appeal to the superior court. Even though, on review, the superior court agreed with the State and ruled, "in that CrRLJ 2.1(c) allows the District Court to authorize the filing of criminal charges by a party other than the prosecuting attorney, it unconstitutionally violates the separation of powers doctrine," we need not address the State's constitutional challenge. CP at 322. "A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case." *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981). Likewise, even though appellant assigns error to the superior court's determination of the case based on constitutional grounds, it is not necessary for this court to address the constitutional error to resolve this case. Therefore, we decline to address both appellant's assignment of error to the superior court's constitutional ruling, as well as respondent's argument based on constitutional grounds.

corruption within the county or whenever so requested by a public attorney, corporation counsel or city attorney upon showing of good cause.

Here, in its ruling, the superior court specifically stated that its inquiry under RCW 10.27.030 focused on "whether Burke was involved in criminal activity within the county, and whether the public interest demands that a grand jury be summoned to investigate this criminal activity." CP at 135. In considering these statutory requirements, the superior court found that it was undisputed that the death of the cat was the result of criminal conduct. However, in further assessing evidence of criminal activity, the superior court considered the Lewis County Prosecuting Attorney's Office's decision to decline to file charges. Specifically, the superior court considered that the prosecutor's office had twice declined to file criminal charges against Burke, even in light of new evidence.

After outlining the evidence of criminal activity in this case, the superior court then weighed the public interest in summoning a grand jury, as required by RCW 10.27.030. In assessing the public interest in summoning a grand jury in this particular case, the superior court noted the authority vested in the prosecuting attorney's office to make charging decisions and the doctrine of separation of powers.

The superior court denied Ware's petition, finding that it would not serve the public interest to second guess the prosecutor's charging decision in this case, especially in light of the prosecutor's inherent charging discretion.[19] In denying Ware's petition, the superior court ruled,

---

[19] Our Supreme Court has held that "the legislature cannot usurp the inherent charging discretion of prosecuting attorneys; as an executive officer, a prosecuting attorney necessarily has discretion to forgo a supplemental charge even if sufficient evidence exists and regardless of whether the charge would interfere with obtaining a conviction." *Rice*, 174 Wn.2d at 890. Further, under

"Mindful that our Supreme Court continues to recognize the unique and exclusive power vested in the prosecuting attorney to exercise discretion as to which individuals are charged and with which offenses, we hereby determine that to usurp this executive power does not serve the public." CP at 137.

The superior court never declared RCW 10.27.030 unconstitutional either facially or as applied to this case. Instead, the superior court considered Ware's petitions on the merits. The superior court's references to the principle of separation of powers and the inherent charging discretion of the prosecutor's office are not equivalent to ruling that a statute unconstitutionally violates separation of powers as applied to private citizens. Thus, we hold that the superior court never declared RCW 10.27.030 unconstitutional as to private citizens and reject Ware's challenge on this basis.

2. Ware's Petition Decided on the Merits

Ware primarily challenges the superior court's ruling that allowing a private citizen to convene a grand jury unconstitutionally violates the separation of powers. As explained above, Ware's challenge on this basis fails.

However, on appeal, Ware also erroneously argues that the superior court "never reached the merits" of his petition. Br. of Appellant at 38. Ware further argues that "[n]o legitimate

---

RCW 9.94A.411, "A prosecuting attorney may decline to prosecute, even though technically sufficient evidence to prosecute exists, in situations where prosecution would serve no public purpose, would defeat the underlying purpose of the law in question or would result in decreased respect for the law."

authority exists to deny Mr. Ware or Ms. Johnson[20] the right to petition the court." Br. of Appellant

at 38. We hold that Ware's argument fails because the superior court did decide Ware's petition

on the merits and did not abuse its discretion in doing so.

>        a.        Standard of review

To address whether the superior court erred in dismissing Ware's petition on its merits, we

must first determine the appropriate standard of review. No court has yet determined the applicable

standard in reviewing a superior court's denial of a petition to summon a grand jury under RCW

10.27.030. We adopt an abuse of discretion standard.

An abuse of discretion standard is appropriate

> when (1) the trial court is generally in a better position than the appellate court to
> make a given determination; (2) a determination is fact intensive and involves
> numerous factors to be weighed on a case-by-case basis; (3) the trial court has more
> experience making a given type of determination and a greater understanding of the
> issues involved; (4) the determination is one for which "no rule of general
> applicability could be effectively construed,"; and/or (5) there is a strong interest in
> finality and avoiding appeals.

*State v. Sisouvanh*, 175 Wn.2d 607, 621-22, 290 P.3d 942 (2012) (internal citations omitted)

(quoting *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003) (applying an abuse

of discretion standard in reviewing a trial court's determination of whether a competency

evaluation had been conducted in a qualified manner). Further, "Where the decision or order of

the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing

---

[20] For clarity, we note that Johnson never joined Ware in his petition to summon a grand jury. Likewise, the superior court never denied Johnson the opportunity to petition the court to summon a grand jury. Therefore, Ware's references to Johnson's petition in the context of Ware's petition to summon a grand jury are misplaced.

of abuse of discretion." *In re T.W.J.*, 193 Wn. App. at 6 (quoting *State ex rel. Carroll*, 79 Wn.2d at 26.).

These factors support an abuse of discretion standard in reviewing a superior court's denial of a petition to summon a grand jury under RCW 10.27.030. RCW 10.27.030 states that the superior court shall convene a grand jury "where the public interest so demands, whenever in its opinion there is sufficient evidence of criminal activity or corruption within the county." Both the sufficiency of the evidence and public interest at stake are fact intensive determinations, involving numerous factors that must be weighed on a case-by-case basis. *Sisouvanh*, 175 Wn.2d at 621-22. Further, " 'no rule of general applicability could be effectively construed' " when the statute requires the superior court to determine "in its opinion," whether "there is sufficient evidence of criminal activity" and whether the public interest so demands convening a grand jury in a particular case. RCW 10.27.030; *Sisouvanh*, 175 Wn.2d at 621-22 (quoting *In re Parentage of Jannot*, 149 Wn.2d at 127).

Also, there is a strong interest in finality and avoiding appeals here. RCW 10.27.030 states that the superior court shall convene a grand jury at the request of a public attorney. Our Supreme Court has recognized that "prosecuting attorneys have broad charging discretion" and "may decline to prosecute, even though technically sufficient evidence to prosecute exists." *Rice*, 174 Wn.2d at 898 (quoting RCW 9.94A.411(1)). Even here, Ware acknowledges that the practical effect of convening a grand jury at the request of a private citizen would be for the prosecutor to

terminate this case by filing a motion to dismiss. [21]   Therefore, in light of the considerations outlined in *Sisouvanh*, we review the superior court's denial of Ware's petition under an abuse of discretion standard.

Affording the superior court discretion allows the superior court "to operate within a 'range of acceptable choices.' " *Sisouvanh*, 175 Wn.2d at 623 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).   A lower court abuses its discretion if its ruling is "manifestly unreasonable or is based on untenable grounds or reasons." *State v. Rapozo*, 114 Wn. App. 321, 323, 58 P.3d 290 (2002).   A court's decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

b.      The Superior Court did not abuse its discretion

Ware contends that the superior court never addressed his petition on the merits because the court never addressed whether Burke could be found guilty of first degree animal cruelty. Specifically, Ware argues that the evidence showed that Burke, "without authorization of law, intentionally caused physical injury to [the cat]." Br. of Appellant at 38.   We hold that, while it may have been inartfully worded, the superior court did address Ware's petition on the merits.

---

[21] To this point, Ware erroneously argues that "there has never been an instance where a trial judge has refused the State's motion [to dismiss]." Appellant Answer to Amicus Brief at 4.   Recently, Division Three of this Court held, as an issue of first impression, that a trial court may deny a prosecutor's motion to dismiss criminal charges "only when the prosecuting attorney offers an inappropriate reason." *State v. Agustin*, No. 34579-3-III, slip op. at 12 (Wash. Ct. App. Jan. 4, 2018), http://www.courts.wa.gov/opinions/pdf/345793_pub.pdf.   In doing so, the *Agustin* court reversed the appellant's conviction and held that the trial court erred in denying the State's pretrial motion to dismiss the case. *Agustin*, slip op. at 12.

In its ruling, the superior court specifically discussed the evidence of criminal activity in this case, as required by RCW 10.27.030. The superior court found that it was "not disputed" that the cat's death involved criminal activity. CP at 135. The superior court did not determine whether the evidence supported a first degree animal cruelty charge. But nothing in RCW 10.27.030 requires the court to state in its opinion what particular criminal activity was present in this particular case.

After detailing the evidence of criminal activity, the superior court analyzed whether the public interest demanded summoning a grand jury, which it was required to find by RCW 10.27.030. The superior court ruled that based on the facts of this case, the considerable investigation conducted by the prosecutor's office, and the unique and exclusive power vested in the prosecuting attorney to exercise charging discretion, the public interest did not demand summoning a grand jury in this particular case. Thus, the record shows that the superior court considered Ware's petition on its merits.

Also, the superior court's decision was not based on untenable reasons or grounds. The superior court properly considered the standard for convening a grand jury under RCW 10.27.030 and ruled that the public interest did not demand convening a grand jury in this particular situation. This ruling was not untenable because the prosecutor's office had already reviewed the evidence twice and found that the evidence was insufficient to prove charges against Burke beyond a reasonable doubt.

The superior court did not abuse its discretion in finding that the public interest did not demand summoning a grand jury in a case where the prosecuting attorney had investigated the

27

case, repeatedly assessed the evidence, and decided to not file charges because it determined that it would not be able to convict Burke of first degree animal cruelty beyond a reasonable doubt. Therefore, we affirm the superior court's dismissal of Ware's petition to summon a grand jury.

CONCLUSION

We hold that the district court's denial of Johnson's petition was not based on untenable grounds or for untenable reasons, and therefore, the district court did not abuse its discretion. We also hold that the superior court did not abuse its discretion in dismissing Ware's petition. Accordingly, we affirm the district court's dismissal of Johnson's petition for issuance of a citizen's complaint, and we affirm the superior court's dismissal of Ware's petition to summon a grand jury.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

28